Richards W. Hannah, J.
The petitioner has moved for an order directing the respondent to pay the accrued arrears under the temporary order and to furnish a bond or undertaking conditioned as the future compliance with the support order.
The respondent has cross-moved for an order (1) dismissing the portion of the order which compels the respondent to provide support for the child upon the ground the court lacks jurisdiction since the child is now in Ireland, (2) or in the alternative ■suspending the order of support dated October 29, 1963 and the order of December 3,1963 from the date hereof and nuc pro tuno to November 8, 1963 on which date the child left the United States on the ground that the court lacks jurisdiction, (3) or in the alternative vacating the order of October 29, 1963 insofar as it required respondent to pay $7.50 weekly on the ground that the court lacks jurisdiction.
On October 29,1963, after a particularly bitter trial, an order of affiliation and a temporary order of support was made for $7.50 weekly .starting November 1, 1963 and a hearing ordered for November 25,1963 to fix the amount of the permanent order, lying-in and hospital expenses and counsel fees. On December 3,1963 the order was reduced to $4 a week based upon the amount of the respondent’s unemployment insurance, the question of the counsel fees submitted to the court for decision and the other issues adjourned from time to time to March 31, 1964. On January 17,1964 the court rendered its decision denying counsel fees. (41 Misc 2d 740.) The hearing was again postponed to June 29, 1964 when all the testimony was completed. Meanwhile in April, 1964 the motion's now before the court were made and argued on June 29, 1964.
The respondent’s motion addressed to the order will be discussed first, for if there is merit to it, the order should be either suspended or the proceedings dismissed.
*723 The respondent urges that this court lost its jurisdiction over the support order when the child was removed from New York State. He states that the power to order support is found in article Y of the Family Court Act and article 3-A of the Domestic Delations Law. His argument is that article Y of the Family Court Act does not include the power to order support for a child outside the United States and that article 3-A of the Domestic Delations Law limits the power of the court to persons within the United States, its possessions and territories. Therefore, the respondent urges that the court lacked power to make the order.
The respondent admits that the court had jurisdiction over the petitioner and respondent when it made its order and that the parties and child were in New York City at that time.
This court does not lose jurisdiction because of the removal of the child from New York State. Section 451 of the Family Court Act specifically provides for continuing jurisdiction until ■the judgment is completely satisfied and it may be modified, set aside or vacated. Therefore, having acquired jurisdiction, the order continues and the court retains jurisdiction unless the order is vacated, .suspended or dismissed for proper cause. The court has not lost jurisdiction even if the child has been removed from New York State. The removal of a child from this State after an order of support has been made neither warrants a suspension of the order nor a dismissal of the proceedings. In Buenos v. Buenos (189 Misc. 262) a motion to vacate an order ■of support was denied although the mother had taken the children to Puerto Dieo where she intended to remain permanently since she could live there upon the amount of the order, but if ¡she was denied support she would return here. In Almandares v. Almandares (186 Misc. 667) a motion to vacate was denied where the mother took the child to Florida. In “ Kaplan ” v. “ Kaplan ” (197 Misc. 687) a motion to suspend the order was denied although the wife and child were permanently residing in Mexico. The court stated that since it had jurisdiction to make the order in favor of one permanently residing out of the State, it may continue it in a situation where the petitioner was a resident at the time the order was made but subsequently moved to a foreign State or country. In this case the respondent urged that the order was conditioned on the petitioner staying in New York State and by her return to Mexico she forfeited her rights. In Wagner v. Wagner (257 App. Div. 307) it was held to be within the discretion of the court whether an order should be suspended where the wife and child went to Germany for a temporary stay. (See, also, Caplan v. Caplan, 177 Misc. 847; Urdaneta v. Urdaneta, 44 N. Y. S. 2d 142.)
*724 An examination of the financial means of the petitioner and respondent reveal that the petitioner must work to support herself and the child since the respondent claims that he is unable to pay even the $4 a week to support his child. Accordingly, petitioner has temporarily placed the child with her parents in Ireland at a cost considerably below what it would cost her to maintain it here. Even now the amount she is forwarding plus the amount of the order, $4 weekly, which respondent has not been paying is insufficient to cover the expenses. Obviously, if petitioner had kept the child here, she would have had to seek public assistance for a considerable period of time. Moreover, it ishould make no difference to the respondent where the child is since he has not evinced the slightest interest in it, steadfastly denying its paternity. To this may be added, the fact that the amount of the order is so small that it obviously fails to sustain the infant. The language of the Appellate Division in Duerr v. Wittmann (5 A D 2d 326, 331) seems pertinent to respondent’s position here. The court said: “ Given the assurance of definite support, the mother may then be in a position to send for her child and bring it up under her own supervision.” Therefore, I feel that the order should be continued and neither suspended nor dismissed.
I reject respondent’s argument that since the child has been removed from New York State that article V of the Family Court Act no longer applies as far as support is concerned. Since September 1, 1962 this court has had exclusive jurisdiction over paternity proceedings (Family Ct. Act, §§ 511, 521), and included in its powers is the power to make an order of affiliation (§ 542), an order of support (§ 545) and to determine custody (§ 511). The act sets forth the obligations of the parents and even provides for future support after the death of either or both parents (§ 513). Therefore, this court has been granted exclusive jurisdiction over all phases of paternity proceedings. Article 8 of the Domestic Relations Law was the original source for these proceedings giving power to the Children’s Court by section 6 of the Children’s Court Act, and to the Court of Special Sessions in New York City by section 60 of the New York City Criminal Court Act. However, all these sections were repealed effective on September 1, 1962 when the new Family Court Act became effective and all powers over paternity proceedings placed in this court. There is no provision in the Family Court Act which limits its jurisdiction to support after an order has been made to children who are in New York State or the United States. In view of the decisions cited above for the support of a child outside New York State, the Legislature must be pre *725 sume cl to have been aware of these holdings and the fact that the new Family Court Act did not contain provisions limiting the support to when the child was in New York State or in the United States, indicates that the Legislature desired that the support for the child be continued as ordered by the court. A reading of article 3 of the Domestic Relations Law, effective July 1, 1958, shows that there was no intent that article 3-A supersede any other statute or act. Section 41 provides: ‘ ‘ This article .shall be construed to furnish an additional or alternate civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter ”. In addition article 3-A is limited to the United States, its territories and possessions and the District of Columbia (Domestic Relations Law, § 31, subd. 1). Therefore, if respondent’s contention were accepted an out-of-wedlock child could only receive support as subdivision 1 of section 31 provides whereas the Family Court Act had ordered support for children who are outside the United States. Moreover, subdivision 5 of section 33 provides that the liability of a natural father for the support of his out-of-wedlock child shall not be enforeible unless he has been adjudicated the child’s father by a court of competent jurisdiction or has acknowledged its paternity in certain ways. This section also emphasized that article 3-A is merely an additional remedy to reach respondents who cannot be reached by the provisions of the Family Court Act. Accordingly, I find that this court had and has jurisdiction to grant and enforce its order although the child is temporarily in Ireland with the petitioner’s parents.
The respondent urges that a temporary order could not be made since the court had not taken any evidence as to the financial abilities of the parents, their total responsibilities and the needs of the child. Section 545 of the Family Court Act provides that “ the court shall direct a father possessed of sufficient means or able to earn such means to pay weekly or at other fixed periods a fair and reasonable sum for the support and education of the child until the child is twenty-one.” The court did not take such evidence but relied upon some general statements of the parties and set the modest temporary amount of $7.50 which was in effect only for a month and then reduced it to $4 weekly after a partial hearing. However, since Schaschlo v. Taishoff (2 N Y 2d 404) and Epstein v. Corbelli (18 A D 2d 633) it appears that a hearing must be held to determine the financial resources of the parties. It would also appear that since section 434 of article 4 — Support Proceeding — provides *726 for the power to make a temporary order that the absence of such a provision in article V — Paternity —would indicate that the court lacked such power in paternity cases. Accordingly, I shall vacate the order of support dated October 29, 1963 for $7.50 a week and the modified order of support dated December 3, 1963.
Section 545 of the Family Court Act provides that the court shall direct a father possessed of sufficient means or able to earn such means to pay weekly or at other fixed periods a fair and reasonable sum for the support and education of the child until the child is 21. The order may also direct such a father to pay for the support of the child prior to the making of the order of filiation and shall direct him to pay for “ (b) the necessary expenses incurred by or for the mother in connection with her confinement or recovery, and (c) such expenses in connection with the pregnancy of the mother as the court may deem proper.” Therefore, under this section I have the power to fix the order of support from May 11,1963, the date of the birth of the child.
It was not until June 29,1964 that proof was finally completed as to the financial ability of the petitioner and respondent. The petitioner testified that she had to leave her position on March 1, 1963, that the child was born in Kew Gardens Hospital on May 11, 1963, that she paid $50 of a Doctor Musser’s bill of $250 (balance being covered by insurance) for prenatal care, the delivery and aftercare, that she paid Doctor Freed $50 for care of the child after its birth, which included examination and injections, that the bill of the Kew Gardens Hospital was $323.95 of which she has paid $55. Therefore, hospital and medical expenses total $423.95. The expenses for the child from May 1, 1963 to May 1, 1964 total $461 representing cost of crib, mattress, play pen, carriage, clothing, diaper service, foods et cetera. Petitioner expended $21.90 for vitamins, drugs and tests for herself during her pregnancy. Petitioner testified that she had borrowed $2,300 from her father, which she used for support from March 1, 1963 until she went to Ireland. She has repaid $100. She stated that she earns presently $64 net weekly. She details her expenses as $97 monthly rent, $20 weekly sent to her parents for the care of the child, $10 telephone, $9 gas and electricity, $60 monthly for food plus miscellaneous items for laundry and carfare. She also stated that she sends food, vitamins and clothing to the child but gave no value. She stated she started sending the $20 on April 13, 1964.
The respondent testified that on August 13, 1963 he had lost his job and received unemployment benefits of $50 weekly. At *727 the time of the trial he earned $610 gross monthly bnt lost this position on August 13,1963. He received unemployment benefits of $50 weekly until December 15, 1963 when he resumed work for another airline at $81 weekly until January 31, 1964, then received unemployment insurance benefits until April 6, 1964 when he resumed employment at $83.83 weekly net. Respondent supports a wife and daughter. He lists his monthly expenses as: rent $93, gas and electricity $20, telephone $10, food $160, miscellaneous $110 and support for his mother in Yugoslavia $50-$60 monthly. He also lists these expenses: $65 monthly on a bank loan of $845; $55 monthly on a bank loan of $715, personal loans of $650 upon which nothing is being paid, $160 for uniforms, $35 monthly for German lessons for his daughter, $5 weekly for gasoline for his car and $140 yearly for its insurance and about $600 yearly for the education of his daughter at a private school. Respondent states he has no assets of any kind.
There is serious doubt in my mind that the respondent should be allowed all the deductions he claims. Certainly the $35 expense of German lessons, the cost of the private school, the $50 a month for his mother in Yugoslavia should be disallowed. The item of $110 for miscellaneous expenses appears large as does the $160 monthly bill for food. In fact, if respondent’s alleged present expenses are totaled they amount to about twice his income and his expenses prior to the bank loans exceeded his income considerably.
An examination of respondent’s expenses indicate that he apparently continued to live in his accustomed manner by borrowing although he was out of work. The unnecessary expenses continued, the private schooling and the private German lessons for the daughter totaling roughly over $1,000 yearly continued, and the money sent to Yugoslavia in a private manner. While I realize that the respondent may not be in the best financial condition, I feel that he should not be permitted to continue living beyond his means and leave the support of his child to the petitioner, her parents and perhaps to public assistance. Accordingly, I order support for the child based upon the facts presently before me in the amount of $4 weekly starting on October 29, 1963, to be paid to the mother. The respondent is to be credited with any amounts he has paid under the vacated order.
I find that the respondent is responsible for $200 of the medical expenses and $200 of the other expenses representing the necessary furniture, carriage and clothing. Both these figures are less than half of these expenses. The amount of $400 is to be paid at the rate of $2 weekly starting January 2, 1965 direct to the mother.
*728 The petitioner’s motion for an order directing respondent to pay the arrears and for a bond for future payments is denied.
The respondent’s motion is denied as indicated, and granted as indicated in this opinion.