OPINION OF THE COURT
Alan J. Saks, J.
Plaintiff Alice A. Cahn, the former wife of defendant Frederick W. Cahn, commenced this action to enforce a 1970 Illinois judgment for child support arrears. Both parties move for summary judgment. The court holds that the Illinois judgment is entitled to full faith and credit but withholds leave to enter summary judgment pending allowing defendant an opportunity to' reopen the Illinois judgment.
The parties had lived as husband and wife in Illinois. They were divorced in June, 1962 in Illinois. Custody of their two children was awarded to the wife.
In August, 1962, Mrs. Cahn commenced a proceeding in Illinois against her ex-husband, then and now a New York resident, under the Illinois Uniform Reciprocal Enforcement of Support Act (111 Stats Ann, ch 40, § 1201 et seq.), that State’s counterpart to New York’s Uniform Support of Dependents Law (USDL; Domestic Relations Law, art 3-A, § 30 et seq.) to secure support for the two children. Illinois, *1055 as “initiating” State, forwarded the petition to New York, the “responding” State, where it was docketed in the Family Court, New York County (the USDL action). (See, generally, Matter of Huffman v Huffman, 93 Misc 2d 790; Legislation: New York Uniform Support of Dependents Law — Its Operation to Date, 30 St. John’s L Rev 309.) Defendant’s obligation was set at $14 a week per child.
The following year, 1963, Mr. Cahn personally appeared in Illinois and petitioned the Illinois court for enforcement of his visitation rights, and Mrs. Cahn cross-moved for increased support. The court ordered Mrs. Cahn to honor Mr. Cahn’s visitation rights and ordered him to continue support payments at the same level “until further order of this Court.” Jurisdiction of the matter for the purpose of enforcement was retained by the Illinois court.
With the exception of a brief period in 1963, Mr. Cahn’s visitation rights were not honored. Nevertheless, he continued to make payments through the New York City Family Court Support Bureau until 1968. Finally, upon his petition, that court conditioned his obligation to continue support upon his right to see his children, and by order dated October 28, 1968, suspended its prior USDL support order, returned all moneys it was holding to him and sent a confirming letter to the Illinois Reciprocal Support Unit, which had been forwarding payments to Mrs. Cahn.
In 1970, Mrs. Cahn obtained an Illinois default judgment against her ex-husband for $3,388. This sum represented the arrears which had accrued after Mr. Cahn had responded to the 1968 New York order by suspending his support payments. It is to be noted that he had neither answered nor appeared in the 1970 Illinois proceeding that eventuated in said judgment.
The parties have called to the court’s attention several subsequent litigational confrontations between them in Illinois. However, those matters are irrelevant to the instant decision, which involves only a suit to enforce the 1970 Illinois judgment. The parties have not alluded to any litigation in New York between the rendition of the 1970 Illinois judgment and the instant action, which was not commenced until 1981. The two children are no longer minors. Because the Illinois judgment was based on de *1056 fault, the simplified procedure under CPLR article 54 (Uniform Enforcement of Foreign Judgments Act) is not available. Therefore, a plenary common-law action on a judgment is required.
Defendant now attacks the jurisdiction and authority of the Illinois court, claiming: (1) the 1968 New York order suspending his support obligation modified the prior (1963) Illinois order and was conclusive on the subject of arrears in any later proceeding, and (2) he was never served in the 1970 proceeding.
DISCUSSION
The USDL order suspending defendant’s support obligation cannot be construed as a modification of the 1963 Illinois order and is not entitled to enforcement in Illinois.
This conclusion is mandated by the language of New York’s USDL (Domestic Relations Law, § 41, subd 1): “This article shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair, any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter.”
The purpose of the Uniform Reciprocal Enforcement of Support Acts is to facilitate the enforcement of support payments for dependent children by providing for collection across State lines. (Matter of Huffman v Huffman, 93 Misc 2d 790, supra.) In both New York (Matter of Anonymous v Anonymous, 44 Misc 2d 721, 725), and Illinois (Super v Armstrong, 83 Ill App 3d 1062), the remedy is merely “additional or alternative”. The intent is to enlarge dependents’ remedies, not diminish them. It is designed to enforce previously entered orders, not modify or terminate them. (Coons v Wilder, 93 Ill App 3d 127.) Remedies which are available under any other statute remain unimpaired. (Domestic Relations Law, § 41, subd 2.)
Other States which have enacted similar statutes agree. (Weller v Weller, 14 Ariz App 42; Zimmerman v Zimmerman, 131 Ga App 567; State ex rel. Shannon v Sterling, 248 Minn 266; Salito v Salito, 107 NH 77; Stubblefield v Stubblefield, 272 SW2d 633 [Tex]; see, also, Ann., 42 ALR2d 768, 776.)
*1057 A case closely in point to the instant one is Nichols v Bardua (74 AD2d 566). There, the parties were divorced in New York in 1975. Merged into the decree was a stipulation under which the husband was to pay $400 monthly in child support. The decree further provided that the Supreme Court and Family Court were to retain concurrent jurisdiction for the purpose of modifying or enforcing it. Subsequently in 1975, the ex-wife commenced a USDL proceeding in Dutchess County Family Court. The ex-husband answered it in Westchester County, where he was apparently then living. Westchester County Family Court decided it by reducing his obligation to $325 per month. In 1978, the ex-wife commenced a second USDL proceeding in Dutchess County Family Court. By this time, the ex-husband had moved to Connecticut, so it was referred to a Connecticut court. By oral directive, no formal order having been signed, the Connecticut court permitted him to reduce his payments to $260 per month. In 1979, the ex-wife applied in Supreme Court, Dutchess County, by order to show cause, to enter judgment for the arrears alleged to have accumulated under the original divorce decree, calculating his obligation at $400 per month for the entire period since the original decree. The ex-husband claimed the benefit of the two USDL orders, claiming that they had modified his obligations. The Appellate Division rejected that contention, stating (pp 566-567): “We agree with respondent, and with Special Term, that the two USDL proceedings did not in any way impair or reduce appellant’s obligation to provide child support in conformance with the provisions of the divorce judgment. With regard to the Connecticut court’s directive, we note that Connecticut’s Uniform Reciprocal Enforcement of Support Act (the analogue of our USDL) provides (see Conn Gen Statutes Ann, former § 17-351, now § 46b-204): ‘Application of payments. Any order of support issued by a court of this state when acting as a responding state shall not supersede any previous order of support issued in a divorce, dissolution of marriage or separate maintenance action, but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.’' Accordingly, even if the Court of *1058 Common Pleas directive had been reduced to a written order, it could not, under Connecticut law, have constituted a modification of the divorce judgment. (See, also, Banton v Mathers, 159 Ind App 634; Campbell v Jenne, 563 P2d 574 [Mont].) New York’s USDL does not contain any provision equivalent to the afore-mentioned Connecticut statute. It should be noted, however, that subdivision 1 of section 41 of the Domestic Relations Law expressly provides that the USDL should be construed as providing an ‘additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter.’ To construe the Westchester County USDL order as a modification of the divorce judgment would impair respondent’s right to seek a money judgment for arrears under the original divorce judgment, a result clearly contrary to the USDL’s character as an ‘additional or alternative’ remedy. We note, moreover, the fundamental unfairness in permitting the court of a remote county or jurisdiction, in which the support obligee has not appeared, to reduce, or nullify the obligee’s rights under prior, non-USDL court orders.”
Although this court agrees that it was within the Family Court’s authority to condition support payments upon the mother’s compliance with visitation rights (Matter of Shinouda v Shinouda, 96 Misc 2d 290), the 1968 conditional order suspended Mr. Cahn’s duty to pay support to the New York support bureau only.
Accordingly, this court holds that the USDL order did not modify the Illinois decree, thus leaving the plaintiff’s rights under the 1963 Illinois order unimpaired.
Having concluded that the Illinois court was not bound by the New York USDL order, the court now turns to the question of the enforcement of the Illinois judgment in New York.
Section 1 of article IV of the Constitution of the United States requires New York to give full faith and credit to the judgment of a sister State. If the rendering court had jurisdiction of the subject matter and the parties and the judgment was not obtained by fraud, its validity is not open *1059 to attack in the court of a sister State, even if it was obtained upon a default. (Riehle v Margolies, 279 US 218, 225; Parker v Hoefer, 2 NY2d 612; Oldham v McRoberts, 21 AD2d 231; New Cent. Jute Mills Co. v City Trade & Inds., 65 Misc 2d 653.) Conversely, if that court lacked jurisdiction, the judgment is void and may not be enforced in any State. (See, e.g., Anderson v Anderson, 30 Misc 2d 1034.)
It is uncontroverted that personal jurisdiction had been acquired over Mr. Cahn in the 1963 proceedings. Under the Illinois law then in effect, as set forth in the final order of September 16,1963, the Illinois court retained jurisdiction of this matter for the purposes of enforcement and modification. (De La Cour v De La Cour, 363 Ill 545; Ill Stats Ann, ch 40, former § 19.) Jurisdiction having previously been acquired over the defendant, no additional summons was necessary in the 1970 proceeding. (Reese Hosp. & Med. Center v Mutual Life Ins. Co. of N. Y., 397 F2d 794; McClellan v McClellan, 125 Ill App 2d 477; Mueller v Mueller, 36 Ill App 2d 305.)
Although Mr. Cahn categorically denies receiving notice of the 1970 hearing, the file before this court shows service of notice of the October 6,1970 hearing by mail on September 28,1970. The test is not the actual receipt of notice but whether the required steps were taken to notify. (Atherton v Atherton, 181 US 155,172; Polansky v Richardson, 351 F Supp 1066.) This question must be determined by Illinois law. The issue of the sufficiency or receipt of notice cannot be collaterally attacked in New York. Defendant’s only remedy is a motion to set aside the default in Illinois. (Prenzler v Prenzler, 55 Ill App 3d 244; Gaines v Gaines, 106 Ill App 2d 9; Ill Stats Ann, ch 110, § 72.) Compare Smith v Smith (NYLJ, March 7, 1980, p 5, col 1), in which no affidavits of proper notice to respondent appear in the file. In that case, respondent had appeared in the original Florida action, in which alimony obligations were fixed. When respondent failed to make the required payments, petitioner, in 1978, obtained a Florida judgment for arrears. Although respondent had not appeared at the hearing, the petitioner filed the judgment in New York under CPLR article 54, stating, in part, that the “judgment was not obtained by default in appearance”. Petitioner relied *1060 on the fact that respondent had appeared in the original action and that the order in that action included a provision that “[T]he Court hereby retains jurisdiction of the parties and the cause to enter such order and further orders as may be necessary.” It is unclear what steps, if any, were taken to serve or otherwise notify the respondent of the 1978 proceeding, although the opinion discusses the problem of “sewer service.” The New York court vacated the New York filing of the Florida judgment, on the grounds that a foreign default judgment may not be filed in New York under CPLR article 54 and that respondent’s appearance in the initial action and the court’s retention of jurisdiction over him were “irrelevant to the merits of the arrears proceeding” and did not “require the conclusion that respondent has appeared for the purposes of all subsequent proceedings under the same case number.”
Under all of the circumstances, among them the small amount of notice the defendant received prior to the entry of his default in 1970 and the fact that plaintiff waited 11 years to begin this suit, the court feels that the defendant ought to have an opportunity to move in Illinois to vacate the 1970 default judgment. If it is not vacated, it shall have to be given full faith and credit. Therefore, the court will hold in abeyance the rendition of summary judgment at this time, upon the following conditions:
(1) Defendant shall have up to 60 days from the date notice of this order appears in the New York Law Journal to initiate proceedings in Illinois to vacate. During said time, all proceedings in this court shall be stayed.
(2) If defendant initiates such proceedings in Illinois, such stay shall continue for an additional 60 days, with leave to apply for a further extension thereof upon a showing of necessity.
(3) If defendant fails to commence proceedings in Illinois within 60 days, or upon so commencing them fails to obtain an order vacating the Illinois judgment within 60 days after commencement and if no further stay has been granted, plaintiff may apply on notice to enter summary judgment herein.