CRUZ, APPELLANT, v. CUMBA–ORTIZ, APPELLEE.

[Cite as *Cruz v. Cumba–Ortiz*, 116 Ohio St.3d 279, 2007-Ohio-6440.]

(No. 2006–0973—Submitted April 4, 2007—Decided December 11, 2007.)

CUPP, J.

{¶ 1} This case arises out of a dispute regarding the amount of child-support arrearage that appellee, Luis Cumba–Ortiz, owes appellant, Lillian Rivera Cruz, under a 1971 Puerto Rico divorce decree. Ms. Cruz contends that a 1994 federal support statute and a 1998 Ohio law, which address enforcement of multiple child-support orders, cannot be retroactively applied to nullify the arrearage due under the child-support order issued in 1971. Mr. Cumba–Ortiz contends that the two statutes must be applied retroactively, and thus a 1976 New York support order divested Puerto Rico of jurisdiction to enforce its 1971 order.

{¶ 2} We hold that the 1976 New York support order, and a second one issued in 1978, did not abrogate Cumba–Ortiz's child-support obligations under the 1971 Puerto Rico divorce decree. Accordingly, we need not address the constitutional arguments that Ms. Cruz raises in her propositions of law.

I

A

{¶ 3} Lillian Cruz married Luis Cumba–Ortiz in New York. Cruz later moved to Philadelphia, where she gave birth to a daughter on August 18, 1970. The daughter suffers from severe retardation, which renders her totally and permanently incapacitated. On October 4, 1971, a Puerto Rico court granted Cruz's petition for divorce, granted her custody of the daughter, and ordered Cumba–Ortiz, the father, to pay $40 per week in child support.

{¶ 4} In 1976, Cruz, who had returned to New York, obtained an order enforcing the 1971 Puerto Rico child-support order. The New York court ordered Cumba–Ortiz to pay $15 per week in child support. In that order, the New York court observed that the Puerto Rico court "ha[d] not retained exclusive jurisdiction to enforce" its decree. In 1977, the New York court modified its

order to require Cumba–Ortiz to pay an additional $10 per week toward an arrearage.

{¶ 5} In 1978, the New York court terminated its support order because Cruz and her daughter no longer lived in New York. The termination order fixed the arrearage at $190 and required Cumba–Ortiz to pay $10 per week to the state department of social services toward the arrearage.

## B

{¶ 6} Cumba–Ortiz now lives in Cleveland. On December 1, 2003, Cruz registered a 2003 Puerto Rico support order in Cuyahoga County Domestic Relations Court, pursuant to R.C. 3115.39, to collect over $64,000 in arrears on the original 1971 Puerto Rico child-support order against Cumba–Ortiz. The arrearages were calculated through August 2003. On December 17, 2003, Cumba–Ortiz contested the registration of that order. In his pleading, Cumba–Ortiz asserted the defenses of laches, estoppel, statute of limitations, lack of subject-matter jurisdiction, lack of personal jurisdiction, and R.C. 3119.86(B).

{¶ 7} On May 10, 2004, Cruz registered an April 2004 Puerto Rico order setting the child-support arrearage at $65,549.28. Cruz also filed a copy of a ruling in which the Puerto Rico court found that the parties' daughter, L.C., was permanently disabled from infancy due to severe mental retardation. On June 15, 2004, the Cuyahoga County court, after finding that Cumba–Ortiz consented to the registration, entered an order that confirmed the April 2004 Puerto Rico arrearage order. Cumba–Ortiz agreed to pay $176.80 per month in current support— the monthly equivalent of the $40–per–week support required by the original 1971 order, plus a two percent processing charge. Cumba–Ortiz also agreed to pay an additional $49 per month toward the arrearage. The Cuyahoga County court order indicated that Cumba–Ortiz did not waive any jurisdictional defenses for relief from the Puerto Rico orders.

{¶ 8} On September 3, 2004, Cumba–Ortiz moved to dismiss the registered Puerto Rico order for lack of subject-matter jurisdiction. Cumba–Ortiz argued that Puerto Rico lost jurisdiction over the matter in 1976, when New York issued its support order and ruled that Puerto Rico had not retained exclusive jurisdiction to enforce the original order.

{¶ 9} Before the Cuyahoga County court ruled on Cumba–Ortiz's motion to dismiss, Puerto Rico, in September 2004, issued an order that increased the current support obligation to $1,676 per month, set Cumba–Ortiz's arrearage at $68,277.27 through September 7, 2004, and imposed an additional $503–per–month obligation toward the arrearage. Cruz registered the September 2004 Puerto Rico order in the Cuyahoga County court. The Cuyahoga County court served Cumba–Ortiz by regular mail with a copy of the motion to register the

latest support order, after the motion was returned unclaimed when sent as certified mail. Cumba–Ortiz did not contest the registration of the September 2004 Puerto Rico order.[1]

{¶ 10} On January 20, 2005, a magistrate in Cuyahoga County held a hearing on Cumba–Ortiz's motion to dismiss the registered April 2004 Puerto Rico order and Cruz's motion to register the September 2004 Puerto Rico order. The magistrate granted in part and denied in part Cumba–Ortiz's motion to dismiss for lack of jurisdiction and granted Cruz's unopposed motion to register the September 2004 Puerto Rico order. While the magistrate agreed with Cumba–Ortiz that the Puerto Rico court lost jurisdiction of the matter in October 1976 when the New York court issued its first support order, the magistrate also held that Puerto Rico reestablished its jurisdiction after the New York order terminated. The magistrate also concluded that Cumba–Ortiz was precluded from relitigating the registration of the April 2004 Puerto Rico order, because the language in the June 15, 2004 consent order, which stated that Cumba–Ortiz did not waive any jurisdictional defenses, addressed only Puerto Rico's alleged lack of jurisdiction in issuing the 1971 divorce decree.

{¶ 11} The magistrate also ordered that the September 2004 Puerto Rico order be confirmed, after finding that Cumba–Ortiz failed to contest the registration. See R.C. 3115.43(B). The magistrate ordered Cumba–Ortiz to pay $1,676 per month for the current support of his daughter, and an additional $503 per month toward arrearages, consistent with the September 2004 Puerto Rico order. The parties did not object to this order. On March 30, 2005, the Cuyahoga County Domestic Relations Court adopted the magistrate's decision in its entirety and entered judgment against Cumba–Ortiz. Cumba–Ortiz did not appeal the common pleas court's judgment entry.

{¶ 12} On May 2, 2005, Cumba–Ortiz moved to vacate that judgment for lack of subject-matter jurisdiction. Cumba–Ortiz argued that his consent to the registration of the April 2004 Puerto Rico order was not a waiver of any objection to subject-matter jurisdiction. The domestic relations court denied Cumba–Ortiz's motion to vacate.

---

1. Cruz does not argue that Cumba–Ortiz's failure to contest the registration of the September 2004 Puerto Rico order precluded Cumba–Ortiz's challenge of that order. See R.C. 3115.43(B) ("If the nonregistering party fails to make the request [to contest the validity of enforcement of a registered order] in a timely manner, the order is confirmed by operation of law"); R.C. 3115.45 ("Confirmation of a registered order, whether by operation of law under section 3115.43 of the Revised Code or after notice and hearing pursuant to section 3115.44 of the Revised Code, *precludes further contest of the order with respect to any matter that could have been asserted at the time of registration*" [emphasis added]). Accordingly, that issue is not before us.

{¶ 13} Cumba–Ortiz appealed from the order denying his motion to vacate. The Eighth District Court of Appeals held that he had not waived his challenge to Puerto Rico's jurisdiction by consenting to registration of the April 2004 Puerto Rico support order, because Cumba–Ortiz had noted in the consent order that he "[did] not waive any jurisdictional defenses for relief from all Puerto Rico court orders." *Cruz v. Cumba–Ortiz*, Cuyahoga App. No. 86572, 2006-Ohio-1362, 2006 WL 728734, ¶ 12.

{¶ 14} The appeals court concluded that New York gained exclusive jurisdiction over the parties in 1976, and that "[a]t that point, Puerto Rico no longer had jurisdiction." Id. at ¶ 13. The Eighth District held that Puerto Rico could recover only those arrearages that accrued after the October 1971 divorce decree but before October 1976, when New York obtained exclusive jurisdiction. Id. at ¶ 14. The appeals court also held that Puerto Rico has jurisdiction to order current support for the child, because the mother and child now live there. Id. at ¶ 15, 16. The appeals court affirmed the trial court's order insofar as it registered Puerto Rico's order for current support, vacated the trial court's order insofar as it confirmed the Puerto Rico order establishing arrearages since 1971, and remanded for recalculation of the arrearages that had accrued from 1971 to 1976. Id. at ¶ 16.

{¶ 15} Cumba–Ortiz does not contest Puerto Rico's jurisdiction to order current support. During the argument before this court, counsel for Cumba–Ortiz represented that he is challenging the September 2004 Puerto Rico order increasing his current support obligation to $1,676 per month in Puerto Rico. Accordingly, that issue is not before us.

C

{¶ 16} In this court, Cruz presents two propositions of law. The first asserts that the appellate court's retroactive application of the federal Full Faith and Credit for Child Support Orders Act, Section 1738B, Title 28, U.S.Code (the "federal full-faith-and-credit act") and Ohio's version of the Uniform Interstate Family Support Act, codified at R.C. 3115.07 et seq. (the "uniform-support act"), to abrogate the child-support arrearage calculated by Puerto Rico denied Cruz a substantive, vested right to the arrearage. Cruz's second proposition of law contends that application of the federal full-faith-and-credit act and the Ohio uniform-support act before their effective dates violates the Equal Protection Clauses of the United States and Ohio Constitutions. Fourteenth Amendment to the United States Constitution; Section 2, Article I, Ohio Constitution.

II

{¶ 17} The Eighth District Court of Appeals determined that Puerto Rico lacked subject-matter jurisdiction to issue arrearage orders for any period after

October 1976, when New York obtained jurisdiction. The appellate court based that determination solely on its conclusion that New York obtained "exclusive and continuing jurisdiction" over the issue of support when Cruz sought to enforce the 1971 Puerto Rico order there, thus divesting Puerto Rico of jurisdiction. *Cruz*, 2006-Ohio-1362, 2006 WL 728734, ¶ 13. The appellate court applied the federal full-faith-and-credit act and the Ohio uniform-support act to determine the effect of the New York support orders. See id. at ¶ 13, fn. 4 (citing cases construing those statutes). For the reasons that follow, the court of appeals erred in applying the federal full-faith-and-credit act and the uniform-support act to construe the New York orders that by their own terms had ceased to operate over a decade before those statutes went into effect.

A

{¶ 18} Before the federal full-faith-and-credit act was enacted, child-support obligors could have multiple, inconsistent obligations in different states. See 9 Uniform Laws Annotated, Matrimonial, Family & Health Laws (2005), Uniform Interstate Family Support Act, 281, Prefatory Note to 1996 Act, at 287 ("multiple support orders could be in effect in several states"); see, also, *New Hanover Cty. v. Kilbourne* (2003), 157 N.C.App. 239, 241, 578 S.E.2d 610 (describing North Carolina practice under the Uniform Reciprocal Enforcement of Support Act). In 1994, Congress found that the different state laws for enforcing child-support orders contributed to the pressing problem of relatively low levels of child-support payments in interstate cases and encouraged a disregard of court orders, resulting in massive child-support arrearages nationwide and hardships for the children who needed support. See Full Faith and Credit for Child Support Orders Act of 1994, Section 2(a)(3)(B) through (D), Pub.L.No. 103–383.

{¶ 19} To remedy these problems, Congress enacted the federal full-faith-and-credit act, Section 1738B, Title 28, U.S.Code. The act sought to establish national standards under which courts of various states were to determine their jurisdiction to issue child-support orders and the effect to be given by each state to child-support orders issued by the courts of other states. See Section 1738B(d) and (f), Title 28, U.S.Code; Section 2(b), Pub.L. No. 103–383. A few years later, as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 110 Stat. 2105 (1996), Congress required each state, by January 1, 1998, to adopt the uniform-support act in order to remain eligible for federal funding of child-support enforcement. See Section 666(f), Title 42, U.S.Code. The uniform-support act sets forth rules for identifying the controlling child-support order and determining which state has "continuing, exclusive jurisdiction" over the order. See R.C. 3115.07 and 3115.09. Through these rules, the uniform-support act aims at creating a system in which only one valid support order is in effect at any one time. See 9 Uniform Laws Annotated, Uniform Interstate Family Support Act

at 287. Cf. Section 1738B(d), (f), Title 28, U.S.Code. Ohio adopted the 1996 version of the uniform-support act effective January 1, 1998. See R.C. 3115.01 through 3115.59.[2] The Commonwealth of Puerto Rico adopted the uniform-support act effective December 20, 1997. See Section 541 et seq., Title 8, Laws of Puerto Rico. All states have now adopted the uniform-support act. See 9 Uniform Laws Annotated, Uniform Interstate Family Support Act at 159 (states that currently have in effect the 2001 version) and at 281 (states that adopted 1996 version).

{¶ 20} In this case, Cruz asks us to determine the effect of the 1976 and 1978 New York support orders under the full-faith-and-credit act and the uniform-support act. Specifically, Cruz asks us to decide whether the rules set forth in the federal full-faith-and-credit act and the uniform-support act for recognizing the controlling child-support order can be applied retroactively to divest her of the accrued arrearages on the 1971 Puerto Rico divorce decree. See Section 1738B(f), Title 28, U.S.Code; R.C. 3115.09. Cumba–Ortiz argues that the federal full-faith-and-credit act and the uniform-support act do apply, and that they give priority to the New York orders over the 1971 Puerto Rico order.

B

{¶ 21} This case turns on the effect of the 1976 and 1978 New York support orders. The federal full-faith-and-credit act provides that "[i]n interpreting a child support order including the duration of current payments and other obligations of support, a court shall apply the law of the State of the court that issued the order." Section 1738B(h)(2), Title 28, U.S.Code; see, also, R.C. 3115.41 ("The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order"); R.C. 3115.01(I) (" 'Issuing state' means the state in which a tribunal issues a support order"). The specific issue here is whether the 1976 New York order effectively abrogated the 1971 Puerto Rico order, and thus whether the 1978 New York order, which terminated Cumba–Ortiz's support obligations under the 1976 order, also terminated his support obligation under the 1971 Puerto Rico divorce decree. Accordingly, we begin by determining the effect of the 1976 and 1978 New York orders under New York law.

{¶ 22} On its face, the 1976 New York order did not purport to abrogate or supersede the 1971 Puerto Rico divorce decree that ordered Cumba–Ortiz to pay child support for his daughter. The caption of the 1976 order reads: "Order Enforcing Order Made By Another Court." It ordered Cumba–Ortiz to pay $15 per week in child support. It also stated that Puerto Rico "ha[d] not retained

---

2. The Ohio version contains only technical variations from the official text of the uniform-support act. Section 3, Am.Sub.H.B. No. 352, 147 Ohio Laws, Part II, 2606, 2920.

exclusive jurisdiction to enforce" its decree, but did not state that the New York order superseded the Puerto Rico decree. Thus, the 1976 New York order, by its terms, did not nullify the 1971 Puerto Rico order.

{¶ 23} Under New York law in effect in 1976, a support order issued under a reciprocal support-enforcement statute did not nullify a preexisting foreign support order. See, e.g., *Kaplan v. Kaplan* (1990), 167 A.D.2d 652, 654, 563 N.Y.S.2d 241 (support orders issued under New York's Uniform Support of Dependents Law, N.Y. Domestic Relations Law 37–a (repealed 1997), "did not extinguish or supersede the California [divorce and child-support] judgment"); accord *Cahn v. Cahn* (1982), 117 Misc.2d 1054, 1056, 459 N.Y.S.2d 657 (New York order suspending obligor's support obligation "cannot be construed as a modification" of a preexisting order). The New York courts reasoned that the New York Uniform Support of Dependents Law ("USDL") provided an additional, alternative remedy for collecting child support and did not eliminate other existing remedies. *Kaplan,* 167 A.D.2d at 653, 563 N.Y.S.2d 241. A proceeding under the New York USDL was an "additional or alternative civil remedy [that should] in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter." N.Y. Domestic Relations Law 41(1) (repealed 1997).

{¶ 24} Accordingly, the 1978 New York order, which ended Cruz's support-enforcement proceedings in the New York courts, did not terminate Cumba–Ortiz's support obligations to his daughter under the 1971 Puerto Rico divorce decree. *Kaplan,* 167 A.D.2d at 653–654, 563 N.Y.S.2d 241; see, also, *Lanum v. Lanum* (1983), 92 A.D.2d 912, 912, 460 N.Y.S.2d 344 (father's compliance with a California order was ineffective to alter his obligations under a preexisting New York divorce decree; mother was entitled to a money judgment for arrears accumulating under the preexisting decree); accord *Perez v. Ponce* (Apr. 28, 1999), Summit App. No. 18996, 1999 WL 247758, *2 (New York support order did not abrogate earlier Puerto Rico child-support order). Thus, the court of appeals was mistaken in concluding that Puerto Rico's jurisdiction ended in 1976 when Cruz sought support in New York and she, her daughter, and Cumba–Ortiz lived in that state. *Cruz,* 2006-Ohio-1362, 2006 WL 728734, ¶ 13.

{¶ 25} The court of appeals distinguished *Lanum* and *Cahn* because they involved an obligee parent's enforcement of a support order against the obligor parent in another state, whereas in this case, Cruz and Cumba–Ortiz both appeared before the New York court in 1976 when Cruz obtained the support order there. However, that circumstance does not alter the legal principle in the then-applicable New York cases—that a support order issued to enforce another jurisdiction's support order did not abrogate the first order. Additionally, the New York order provided that it was *enforcing* an order of another court, i.e., the

Puerto Rico divorce decree. In light of New York law then in effect, the 1976 New York order did not supersede the very divorce decree and support order it purported to enforce.

### C

{¶ 26} Whatever retroactive application the federal full-faith-and-credit act and the uniform-support act may have in cases in which two competing support orders are both in effect, an issue we do not decide here, we conclude that the federal full-faith-and-credit act and the uniform-support act do not change the character and effect of a support order that by its own terms ended over a decade before the current laws went into effect. Because the New York orders did not terminate or supersede the 1971 Puerto Rico divorce decree, we need not, and do not, address the questions Cruz poses in her propositions of law about whether the federal support statute and Ohio uniform act were impermissibly applied retroactively to destroy her vested right to child support or whether such an application would deny her equal protection under the laws. By their own terms, the New York support orders ended in 1978. When the federal full-faith-and-credit act and the uniform-support act became effective (in 1994 and 1998, respectively), the New York orders had long ceased to exist.

{¶ 27} By 1994 and 1998, only one support order was still in effect—the 1971 Puerto Rico divorce decree. In 2003 and 2004, Cruz and her daughter lived in Puerto Rico. Thus, the 2004 Puerto Rico support order is the only order still in effect for the support of the parties' child. See Section 1738B(f)(1), Title 28, U.S.Code ("If only [one] court has issued a child support order, the order of that court must be recognized"); accord R.C. 3115.09(A).

### D

{¶ 28} Because the court of appeals erroneously determined that the 1971 Puerto Rico support order terminated when the New York court issued its support order in 1976, the court of appeals mistakenly concluded that the only arrearages payable on the original divorce decree were those that accrued between 1971 and 1976. The appellate court ordered a remand for a determination of that amount.

{¶ 29} Under the current child-support laws, once another jurisdiction's support order has been registered and confirmed, an Ohio court must "recognize and enforce, but may not modify" that order, except as provided in R.C. 3115.46 through 3115.51, if the issuing tribunal had jurisdiction. R.C. 3115.40; see, also, Section 1738B(e), Title 28, U.S.Code. Accordingly, the Puerto Rico orders must be recognized and enforced in Ohio.

{¶ 30} In light of our determination that the New York orders did not terminate Cumba–Ortiz's duty of support under the original 1971 Puerto Rico

divorce decree, we reverse the portion of the judgment below that vacated the orders confirming the registration of the Puerto Rico support orders and remand for enforcement of the registered and confirmed orders.[3] We affirm the portion of the judgment that affirmed the registration of the Puerto Rico order for prospective child support.

### III

{¶ 31} For all of these reasons, we hold that the 1976 and 1978 New York orders did not abrogate Cumba–Ortiz's child-support obligations under the 1971 Puerto Rico divorce decree.

{¶ 32} The judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

O'DONNELL, J., concurs in judgment only.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and Robert H. Grano Jr. and Jon W. Oebker, Assistant Prosecuting Attorneys, for appellant.

Gonda & Associates Co., L.P.A., and Diane M. Gonda; and Jose Torres–Ramirez, for appellee.

IN RE LOOS.

[Cite as *In re Loos,* 116 Ohio St.3d 287, 2007-Ohio-6456.]

---

3. We anticipate that the amounts Cumba–Ortiz has paid toward his support obligations, whether in New York, Puerto Rico, or Ohio, have been or will be credited in the calculation of the arrearage.