OPINION
{¶ 1} Plaintiff-appellant Anthony E. Adams ("Adams") brings this appeal from the judgment of the Court of Common Pleas of Hancock County. For the reasons set forth below, the judgment is affirmed in part and reversed in part.
 {¶ 2} Adams and defendant-appellee Colleen Sirmans ("Sirmans") were previously divorced in Georgia on July 28, 2000. During the marriage, Adams and Sirmans had two children, Chandler (D.O.B. May 31, 1995) and Justin (D.O.B. October 15, 1998). The couple entered into an agreement which provided for joint physical custody of the children. The parties agreed to discuss all decisions concerning the children. However, if there was a dispute, Adams was to be the final decision maker. Additionally, if the parties were to live more than 50 miles apart, Adams would become the residential parent and Sirmans would receive visitation every other weekend and during the summer. "[Adams and Sirmans] stipulate and agree that, since they will be enjoying a shared physical custody arrangement, then neither party will be required to pay child support to the other party." Separation Agreement, 7.
 {¶ 3} In July of 2001, Adams, his current wife, and the children moved to Findlay, Ohio. The parties then began the long distance parenting schedule set forth in the agreement. In September of 2003, Sirmans and her current husband moved to Canal Winchester, Ohio, which was still outside the 50 mile range. The *Page 3 
parties continued to use the long distance parenting schedule. On January 30, 2006, Adams filed a motion for the trial court to accept jurisdiction, to adopt the Hancock County Common Pleas Court Local Rules Appendix J visitation schedule, and for child support. Adams did so to allow him to have some time with the children during the summer. On March 17, 2006, Sirmans filed a motion to adopt the shared parenting plan set forth in the agreement and adopted by the Georgia court. She also filed a motion to have a Guardian Ad Litem ("GAL") appointed. Sirmans then filed a motion for an in camera interview on May 8, 2006. A hearing was held on May 11, 2006, concerning Adams request for summer parenting time. At the hearing, Sirmans informed the court that she would be moving to Bowling Green, Ohio, and living less than 50 miles from Adams. Based upon this testimony, the trial court denied Adams' request and ordered the parties to begin changing custody every week as set forth in the Georgia decree. May 18, 2006, Order.
 {¶ 4} On May 25, 2006, Adams filed a motion to terminate the shared parenting plan and be designated as the residential parent. Adams then filed an emergency motion to adopt Appendix J visitation for the school year. The magistrate overruled the motion finding that "[a]lthough a 30 minute commute may not be in the best interest of the children on a long term basis, the motion does not allege any harm that could be considered to rise to the level of *Page 4 
emergency." Aug. 23, 2006, Order. On this same day, the trial court appointed a GAL. The GAL filed a report of her investigation on September 14, 2006. The GAL then filed her final report on November 3, 2006, as she wished to be removed from the case.
 {¶ 5} On December 14, 2006, and January 16, 2007, hearings were held on the matter. The magistrate issued its decision on April 4, 2007. The magistrate found the Georgia order to be for shared parenting and overruled Adams' motion to modify it. The magistrate then awarded child support to Sirmans. On June 21, 2007, Adams filed objections to the magistrate's decision. On September 25, 2007, the trial court adopted the finding of the magistrate retaining the shared parenting, but overruled the order of child support for Sirmans because the magistrate failed to impute income to her. The magistrate then entered a new decision on September 27, 2007. Adams filed objections to this decision on October 9, 2007. Those objections were overruled by the trial court on October 29, 2007. Adams appeals from those judgments and raises the following assignments of error.
 First Assignment of Error The trial court erred as a matter of law in finding that the Georgia decree of divorce is the equivalent of a shared parenting plan in the State of Ohio for the Georgia decree designated [Adams] as the legal custodian and custodial parent with "ultimate legal decision making authority." *Page 5 
 Second Assignment of Error The trial court erred as a matter of law by failing to adopt Appendix J of the Local Rules of Court as [Sirman's] parenting time given the fact that [Adams] is the residential parent and the parties, as of the time of the filing of [Adams'] motion had been following the essential equivalent of Appendix J since 2001.
 Third Assignment of Error The trial court erred as a result of the court directing [Adams] to pay child support to the nonresidential parent.
 Fourth Assignment of Error The trial court erred as a result of its order releasing the [GAL] from her appointed duties and responsibilities and its failure to appoint a replacement [GAL] for the children.
 {¶ 6} Adams argues in his first assignment of error that the trial court erred in finding that the Georgia decree sets forth the equivalent of a shared parenting decree. In Ohio, the legal concept of "shared parenting" refers to an agreement between parents concerning the care and custody of their children and was previously called "joint custody."In re Bonfield, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241.
 {¶ 7} Here, the parties reached an agreement concerning the care and custody of their children. This agreement was adopted by the Georgia court and made part of the divorce decree. The agreement provides as follows.
 2. The parties, after giving due consideration to all relevant factors, have agreed that it is in the children's best interest that they have joint care, custody and control of their *Page 6 minor children * * *. The parties agree to confer with each other and to share decision making authority as to important decisions affecting the welfare and upbringing of the children with a view towards arriving at decisions which will promote the best interest of the children. Substantial decisions regarding the health, medical and dental care, education, religious and secular, vacations, travel, summer activities such as summer camp, welfare and upbringing of the children shall be made on a joint decision-making basis. The parties agree that during the time each of them has physical custody of said children, that parent shall decide all routine matters concerning the children's welfare. The parties further agree to cooperate with one another in establishing a mutually supportive arrangement regarding such routine decisions. The parties further agree, however, that in the event, after due consultation with one another, a disagreement arises as to a particular decision or course of action with reference to the minor children, the Husband shall be the legal custodian and custodial parent of said minor children of the parties, and shall have the final and ultimate decision-making authority as to any and all matters concerning the minor children not in conflict with the provisions of this agreement and upon which the parties cannot or do not agree. * * *
 * * *
 (c) The Husband and Wife shall continue to have full and active roles in providing a sound moral, social, economic and educational environment for the minor children, and both parties agree to provide such guidance in the future.* * *
 * * *
 (i) Both parties shall exercise, in the utmost of good faith, his or her best efforts of (sic) all times to encourage and foster the maximum relations of love and affection between the minor children and his or her mother and father. Neither party shall in any way impede, obstruct or interfere with the exercise by the other of his or her right of companionship *Page 7 with the minor children, and neither party shall at any time in any manner disparage or criticize the other party, or allow any other to do so, to or in the presence of the minor children.
 3. The parties agree that it is in the children's best interest to share as much time with each parent as possible. Therefore, the parties have reached an agreement whereby they would share physical custody with said children so that each parent would be sharing approximately the same amount of time with the children. * * *
 * * *
 In the event the parties move from their present locations to the extent that they live more than fifth (50) miles from each other, then the parties agree that the alternate weekly visitation schedule would not be in the children's best interest. * * *
 * * *
 4. The parties stipulate and agree that, since they will be enjoying a shared physical custody arrangement, then neither party will be required to pay child support to the other party.
Agreement, 2-7. This agreement was signed by both parties. The Georgia court then held as follows. "The court awards the parties joint custody of their minor child, with [Adams] being designated as the legal custodian and custodial parent with ultimate decision making authority." Georgia Entry, 1.
 In determining child support, the court finds as follows:
 The parties are enjoying shared physical custody, and neither party shall be required to pay child support to the other party. *Page 8 The court has considered the existence of special circumstances and has found the following special circumstances marked with an "X" to be present in this case:
 * * *
 _X_ 5. Shared physical custody arrangements, including extended visitation.
 * * *
 Having found that special circumstance number five (5) listed above exist (sic), the final award of child support which Sirmans shall pay to Adams for support of the children is zero dollars ($0.00) per month.
 The Separation and Property Settlement Agreement entered into by and between the parties * * * is expressly made the judgment of this Court and it is further considered, ordered and decreed that each party hereto shall carry out the terms and conditions of said contract and compliance therewith is made mandatory upon each.
Id. at 1-3. The Georgia decree clearly arose out of an agreement between the parties as to the care and custody of the children and provides for shared physical custody and shared decision making power. This is very similar to Ohio's definition of shared parenting. Unlike Ohio's definition of shared parenting, the Georgia decree does provide for one parent to have the ultimate decision making power in the event the parties cannot reach an agreement in a matter concerning the children. The parties themselves added this provision to their "joint custody" plan by making it a part of the settlement agreement. Based upon this addition, Adams argues that the plan is not a shared parenting plan under Ohio Law. *Page 9 
 {¶ 8} The question of whether the order is a shared parenting plan under Ohio Law is irrelevant. "A court of this state shall recognize and enforce a child custody determination of another state if that state exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter." R.C. 3127.33(A). Both Adams and Sirmans agree that the Georgia court had jurisdiction to enter the judgment and the judgment was properly entered. The parties also agree that no court has modified the judgment since it was entered in 2000. Thus, pursuant to R.C. 3127.33(A), the trial court is required to recognize and enforce the judgment of the Georgia court, regardless of how it would be defined under Ohio law. This means that the question of whether the Georgia decree would equate a shared parenting plan under Ohio law is irrelevant. The trial court only needed to enforce the judgment entered, which it did. Therefore, the trial court did not err in ordering the implementation of the plan previously agreed to by the parties. The first assignment of error is overruled.
 {¶ 9} In the second assignment of error, Adams claims that the trial court erred by not adopting Schedule J visitation as set forth in the local rules of court. Schedule J visitation only applies when one party is designated as the residential parent and the other is designated as the non-residential parent. Since the parties *Page 10 
reside within 50 miles of each other, the physical custody of the children changes every week, and neither parent is designated as the residential or non-residential parent, all pursuant to the Georgia decree. Thus, the trial court did not abuse its discretion in declining to order Schedule J visitation. The second assignment of error is overruled.
 {¶ 10} The third assignment of error claims that the trial court erred by ordering Adams to pay child support. This court notes that under the agreement of the parties, no child support was to be paid by either party. However, a trial court may modify a foreign decree of child support after it is registered as long as the Ohio requirements for modification exist. R.C. 3115.48.
 (A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten percent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.
 * * *
 (C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was *Page 11 not contemplated at the time of the issuance of the original child support order * * *, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in [R.C. 3119.22].
R.C. 3119.79. Both of these sections must be read in conjunction.Bonner v. Bonner, 3d Dist. No. 14-05-23, 2005-Ohio-6173. "Where, as in the present case, the parties voluntarily agree to the amount of an obligor's child support obligation, a trial court granting a motion for modification must find both (1) a change of circumstances, and (2) that such a change of circumstances `was not contemplated at the time of the issuance of the child support order.'" Le v. Bird, 12th
Dist. No. CA2005-04-090, 2006-Ohio-204, ¶ 9 (citing Bonner, supra at ¶ 11).
 {¶ 11} In this case, the parties negotiated a settlement agreement which they voluntarily entered and submitted to the Georgia court. The court then adopted the agreement as part of its decree. The parties both testified that at the time of the agreement, it was contemplated that they would eventually be moving back to Ohio as they both have family here. This anticipated move was why they included a provision for shared parenting when the parties were more than 50 miles apart. Additionally, it was reasonable to anticipate that the parties could remarry, have additional children, and change jobs. These were the grounds the *Page 12 
trial court found as the "change in circumstances." Although these are changes in circumstances, they are not of the type that would not be contemplated at the time the parties entered into their negotiated separation agreement. The "the circumstances surrounding the ten per cent deviation were `contemplated at the time of the issuance of the child support order.'" Bonner, supra at ¶ 15. Thus, the second element under R.C. 3119.79(C) required for modification of the child support was not met and the trial court erred in granting a modification of support. The third assignment of error is sustained.
 {¶ 12} Finally, Adams claims that the trial court erred by not appointing a new GAL after allowing the first one to withdraw from the case. This court notes that the GAL was appointed upon the request of Sirmans, not Adams. At no time did Adams make a request for a GAL. Adams argues that the trial court erred by releasing the appointed GAL and not appointing a replacement. However, Adams did not object to the release of the GAL at the time it was granted. Adams also did not file a motion requesting a new GAL. Instead, the record reveals that all parties merely proceeded by reviewing the final report. "Ohio law is clear that questions not raised and determined in the court below cannot be considered by a reviewing court." BancOhio Nat. Bank v. Abbey LaneLtd. (1984), 13 Ohio App.3d 446, 448, 469 N.E.2d 958 (citing Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 436 N.E.2d 1001). Since Adams did not object to the release of *Page 13 
the GAL to the trial court, he cannot not claim error now. The fourth assignment of error is overruled.
 {¶ 13} The judgment of the Court of Common Pleas of Hancock County is affirmed in part and reversed in part. The matter is remanded for further proceedings.
Judgment Affirmed in Part, Reversed in Part and Cause Remanded.
 SHAW, P.J., and ROGERS, J., concur. *Page 1