[Cite as *Parrick v. Parrick*, 2013-Ohio-422.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

JACQUELINE M. PARRICK AKA,
JACQUELINE M. SNYDER,

     PLAINTIFF-APPELLEE,          CASE NO.  5-12-12

     v.

PAUL A PARRICK,                  O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2009 DR 129

Judgment Affirmed

Date of Decision:  February 11, 2013

APPEARANCES:

    *William E. Clark*  for Appellant

    *Ralph D. Russo*   for Appellee

**WILLAMOWSKI, J.,**

{¶1} Defendant-Appellant, Paul Parrick ("Paul" or "Father") appeals the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, denying his motion to modify child support payments made to Plaintiff-Appellee, Jacqueline Parrick, nka Jacqueline Snyder ("Jacqueline" or "Mother"), under an existing Illinois court order. Paul contends that the trial court erred in denying his motion to modify and in failing to apply Ohio law to modify a foreign child support order; that it erred in calculating Jacqueline's income; and, that the trial court erred in assuming jurisdiction over only one part of the foreign child support order. For the reasons set forth below, the judgment is affirmed.

{¶2} Paul and Jacqueline were married on May 17, 1990 and have two children, Brittany (born in 1991) and Mikaela (born in 1995). The parties were divorced in the Circuit Court of the Second Judicial Circuit in Crawford County, Illinois (hereinafter, the "Illinois Court") in 1997. The Illinois Court named Jacqueline as the primary custodial parent of the two children and Paul was ordered to pay child support. Jacqueline and the children moved to Findlay, Ohio in 1998. Further proceedings in the Illinois Court resulted in a stipulation and order filed November 17, 2000, whereby Paul was ordered to pay $480 biweekly as support for both children.

**{¶3}** Paul moved to Findlay, Ohio in 2005. In 2008, while Jacqueline, Paul and the children were all living in Findlay, Ohio, Paul filed a motion in the Illinois Court seeking to hold Jacqueline in contempt of court for denial of visitation. Shortly thereafter, Jacqueline filed a motion in the same proceeding to modify the child support order, which had remained the same since 2000.

**{¶4}** On December 22, 2008, the parties entered into a "stipulation and agreement," which was approved by the Illinois Court and filed on January 6, 2009. This stipulation and agreement contained provisions to address the visitation issues; it increased the amount of child support to $752 bi-weekly, plus a percentage of any bonus Paul might receive; and, it provided that each parent would pay a specified portion of Brittany's college expenses, and also Mikaela's educational expenses if she attended college.[1] Child support for Brittany was to terminate when she began college in September 2009. At issue in the case before us today is the portion of the order that provided for the payment of child support for Mikaela after Brittany's emancipation. Paul, who was represented by an attorney in the Illinois proceedings, agreed to pay $537 biweekly support for Mikaela, plus 20% of any net bonus received by him.

---

[1] The Illinois Marriage and Dissolution of Marriage Act – 750 ILCS 5, Section 513, permits court orders providing for payment of children's educational expenses beyond the age of majority. While college expense provisions of this type are not mandated in Ohio, agreements for support beyond a child's eighteenth birthday are permitted. *See* R.C. 3119.86(A)(1)(b).

{¶5} On April 1, 2009, less than three months after the filing of the January 6, 2009 order incorporating the parties' stipulation and agreement, Paul filed a motion to register the *November 17, 2000* Illinois Court order in the Common Pleas Court of Hancock County, and to modify the support order based on an alleged change in circumstances. The trial court registered the child support order and the college educational expense order in February and May of 2010, respectively. On July 16, 2010, Paul filed an amended motion in the trial court seeking a modification of the January 6, 2009 child support order as relating to Mikaela "to reflect the parties current incomes which have changed substantially since 2009 pursuant to Ohio law as both parties and the minor child now reside in the state of Ohio and not in the state of Illinois." (R-48) Paul also filed a motion requesting termination of the existing wage withholding order directing payment to Illinois and asking for the establishment of payment of support through the Hancock County Child Support Enforcement Agency ("CSEA"). (R-42)

{¶6} A hearing was held on Paul's motions before a magistrate on October 7, 2010. The magistrate acknowledged that the Illinois child support order had been registered in Ohio and that Ohio law would allow for the modification of that order if Ohio's statutory requirements for modification were met. However, the magistrate found that there had been no substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order

and recommended that Paul's request for a modification should be denied. (05/03/2011 Mag. Dec.)

{¶7} The magistrate found that the only change in circumstances that had occurred since 2008, when the parties negotiated the stipulated agreement, was that Paul's income had increased by about 15%. Paul's total gross income from his employment at Marathon Oil had been $110,660 in 2008 ($12,000 of which was a bonus payment), $126,526 in 2009 (including a $22,000 bonus), and $127,662 in 2010 (including a $20,000 bonus). Jacqueline, a registered nurse, earned $72,557 in 2008, $68,090 in 2009, and anticipated earning $73,000 in 2010. Her income had essentially remained the same.

{¶8} Both parties filed objections to the magistrate's decision and the trial court remanded the matter to the magistrate for the limited purpose of ascertaining Jacqueline's actual income as defined by R.C. 3119.01 et seq. (R-66) Paul had submitted an exhibit showing significant deposits to Jacqueline's bank accounts, which he contended should have been included in Jacqueline's income. (*See* Defendant's Exhibit 3)

{¶9} Following a hearing on this matter on September 2, 2011, the magistrate found that Jacqueline's actual income for 2010 was $73,418.06. The challenged deposits did not constitute income to Jacqueline and were mostly expense account payments from her employer reimbursing her for significant

travel expenses and other costs that were required for her to perform her job. The magistrate again found that there was no significant change of circumstances and recommended that Paul's motion for modification be denied.

{¶10} Paul again filed objections. On January 12, 2012, a hearing was held before the trial court judge on the various issues that had been raised. On February 6, 2012, the trial court filed a detailed decision discussing and analyzing all nine objections that had been raised by Paul. The trial court overruled all of Paul's objections with the exception of maintaining that Paul would continue to pay his support through the Hancock County CSEA. Jacqueline's objections were sustained.

{¶11} The trial court filed the final judgment entry on February 22, 2012, finding that the current Illinois Order regarding child support was "fair and reasonable" and ordered that Paul continue paying the child support as agreed in the stipulation of January 2009. The educational expense portion of the Illinois Order was also to remain in full force and effect. The trial court concluded by stating:

> The Illinois Order and all provisions contained therein continue unmodified and in full force and effect by, between and among [Jacqueline], [Paul] and their children as set forth therein and although said Order is now registered in this state for enforcement under Rev. Code Sec. 3115.40, the tribunal which issued the Illinois Order retains continuing and exclusive jurisdiction over said Order and this Court expressly declines to assume such jurisdiction.

Case No. 5-12-12

(Feb. 22, 2012 J.E.)

{¶12} It is from this judgment that Paul now appeals, presenting the following three assignments of error for our review.

**First Assignment of Error**

**The Trial Court erred in denying Father's motion to modify and committed an abuse of discretion in failing to apply Ohio law in the motion to modify a foreign order registered in Ohio**

**Second Assignment of Error**

**The Trial Court erred in excluding from Mother's income so called reimbursement of business expenses that included unidentified amounts for her personal meals and after hours drinks and an unsubstantiated mileage.**

**Third Assignment of Error**

**The Trial Court erred in modifying the Illinois order in part and then holding that Illinois retains exclusive jurisdiction of the order.**

{¶13} Paul's assignments of error pertain to the trial court's denial of his motion to modify the Illinois Court's child support order. In the past, different state laws for enforcing child-support orders contributed to a problem of relatively low levels of child-support payments in interstate cases and encouraged a disregard of court orders, resulting in hardships for the children who needed support. *Cruz v. Cumba-Ortiz*, 116 Ohio St.3d 279, 2007-Ohio-6440, ¶ 18. To remedy these problems, Congress enacted the federal full-faith-and-credit act, Section 1738B, Title 28, U.S.Code, to establish national standards under which

-7-

courts of various states were to determine their jurisdiction to issue child-support orders and the effect to be given by each state to child-support orders issued by the courts of other states. *Id.* at ¶ 19. The uniform support act sets forth rules for identifying the controlling child-support order and determining which state has "continuing, exclusive jurisdiction" over the order. *Id.*; *see* R.C. 3115.07 and 3115.09. Through these rules, the uniform support act aims at creating a system in which only one valid support order is in effect at any one time. All states have adopted the uniform support act. *Cruz* at ¶ 19. Ohio's codification of the Uniform Interstate Family Support Act ("UIFSA"), originally adopted in 1998, is set forth in Chapter 3115 of the Revised Code.

{¶14} R.C. 3115.07(D) provides that "[a] tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state that has issued a child support order pursuant to a law adopted by the other state that is substantially similar to sections 3115.01 to 3115.59 of the Revised Code." The Ohio Revised Code provides the means for registering and enforcing "foreign" support orders. A support order or income withholding order of another state may be registered in Ohio by following the procedures set forth in R.C. 3115.39 and sending the required information and documents to the appropriate tribunal in this state. A registered support order is enforceable in the same manner and is subject to the same procedures as an order issued by a court in this state. *See* R.C.

3115.40. The purpose of the registration provision is to facilitate enforcement of an order rendered in one state when the support obligor has moved to another state. *Lyle v. Lyle*, 2d Dist. No. 18418 (Jan. 26, 2001), 2001 WL 62539.

{¶15} The new state in which an order is registered and confirmed generally does not have the authority to modify the order, except for certain specified situations. *See* R.C. 3115.40 ("Except as provided in sections 3115.39 to 3115.51 of the Revised Code, a tribunal of this state shall recognize and enforce, but may not modify, a registered order that has been confirmed if the issuing tribunal had jurisdiction."). The state in which the order is registered may modify the order if the parties no longer reside in the rendering state or if they consent to the jurisdiction of the state of registration. R.C. 3115.48. Or, as in this case, R.C. 3115.50 provides authority for Ohio to modify an order in a registration proceeding when all parties reside in this state and the child does not reside in the issuing state.[2]

{¶16} In the limited instances where modification is allowed, the modification of a registered support order "is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state and the order may be enforced and satisfied in the same manner." R.C. 3115.48(B). However, this state may not modify any aspect of the

---

[2] "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order. * * *" R.C. 3115.50.

order that was prohibited from modification under the law of the issuing state. R.C. 3115.48(C) And, "[o]n issuance of an order modifying a child support order issued in another state, a tribunal of this state becomes the tribunal having continuing, exclusive jurisdiction." R.C. 3115.48(D).

{¶17} Trial courts are given broad discretion in determining whether to modify existing child support orders. *Woloch v. Foster*, 98 Ohio App.3d 806, 810 (2d Dist.1994). Therefore, a trial court's decision regarding a motion to modify a child support order will not be overturned absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is more than a mere error in judgment; rather, it suggests that a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court must also give substantial deference to the trial court's findings of fact and will not reverse those findings if they are supported by competent, credible evidence. *Polk v. Polk*, 188 Ohio App.3d 809, 2010-Ohio-3355, ¶ 16 (2d Dist.).

*First Assignment of Error*

{¶18} In the first assignment of error, Paul contends that R.C. 3119.79(A) requires modification of a child support order if there has been a change of ten percent in the amount of child support calculated according to the schedules set forth in the revised code and applicable worksheets. The Illinois Court's child

support order provided for Paul to pay $13,962 per year as support for Mikaela, plus 20% of his bonus. Utilizing the Ohio child support schedule and worksheets, the magistrate computed that Paul's Ohio child support obligation would be calculated to be $9,290.88. Because this "difference" amounted to more than a ten percent reduction, Paul asserts that the trial court erred when it failed to modify the support order and when it concluded that there was no substantial change in circumstances that was not contemplated at the time the prior order was issued.

{¶19} We do not find that the trial court abused its discretion in declining to modify the parties' agreed child support order. The trial court did a thorough and detailed analysis of all of the facts and issues and found at least three valid reasons why the Illinois support order should not be modified. We agree with the trial court's conclusions as explained in the magistrate's opinions, the trial court's decisions overruling Paul's objections, and its final judgment entry.

{¶20} First, the trial court could find no case precedent holding that merely moving a child support order from one jurisdiction to another amounted to a significant change in circumstances. It is true that Illinois child support is computed utilizing different standards than Ohio, but this support order was based

on the parties' joint agreement.[3]   And, there was no evidence of any other change in circumstances affecting the child's needs or the parties' ability to pay support other than the fact that Paul's income had increased.   Paul's motion requesting a modification only three months after the Illinois order was filed appears to be based upon "forum shopping" to lower his support obligation rather than any actual change of circumstances.  Even the fact that all of the parties now resided in Ohio did not constitute a change of circumstances, since they all had lived in Ohio since 2005.

{¶21} However, in order to be thorough and to compare "apples to apples," the trial court completed the Ohio child support worksheets to calculate what Paul's support obligation would be for 2008, 2009, and 2010, based upon Ohio law.  Although there was an *increase* from 2008 to 2009 and 2010 because of Paul's increased income, the differences in the support calculations between those years did not result in a ten percent difference.   Therefore, utilizing the Ohio worksheets alone, the trial court concluded that there was not a change in circumstances substantial enough to require a modification of the child support amount under R.C. 3119.79(A).  (May 3, 2011 Mag. Dec.)

---

[3] There was no worksheet or calculation included with the Illinois Court's order.  However, according to Illinois compiled statute 750 IL CS 5/505, the guidelines for the minimum amount of support specifies payment of 20% of the obligor's income for one child and 28% of the obligor's income for two children. The custodial parent's income is not computed in the guidelines, although it may be considered if the court finds that the application of the guidelines would be inappropriate.  It appears that the parties' stipulated agreement took the Illinois guidelines into consideration.

{¶22} And finally, the trial court noted that Paul's support obligation would not necessarily be lower under Ohio law. The worksheet calculations are not presumed to be the correct amount of child support when the parent's combined income is over $150,000, as in this case where the parents' combined income for 2010 was over $200,000. The worksheet calculations completed by the court were based upon the Ohio child support schedule, which only provides guidelines for incomes up to $150,000. *See* R.C. 3119.021. R.C. 3119.04 directs that child support be determined on a case-by-case basis when the parents combined income is over $150,000. The magistrate reviewed the record and stated:

> The Illinois Court found that the Illinois Order was fair, just and reasonable and in the best interests of the children. There is no evidence that [Paul] cannot comply with that existing child support order. Though the existing child support obligation is significantly more than the amount calculated using Ohio's child support schedule and worksheet, it is not unconscionably more. The existing child support order is within the range of child support orders permitted in Ohio.

(May 3, 2011 Mag. Dec.)

{¶23} Paul's primary complaint on appeal was that the trial court erred in requiring *both* a ten percent deviation in the amount of support owed pursuant to R.C. 3119.79(A) and a finding that there was "a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification," pursuant to the language in R.C. 3119.79(C). He claims that a finding of a ten percent deviation in the amount of

child support by itself is sufficient to require modification, citing to the Ninth District Court of Appeals decision in *Cook v. Cook*, 143 Ohio App.3d 687, 690 (9th Dist.2001)

{¶24} We find several flaws in Paul's reasoning. First, the trial court in this case *did not find the ten percent deviation* which would constitute a change of circumstances under R.C. 3119.79(A) when it did an "apples to apples" comparison of the 2008, 2009 and 2010 computations utilizing Ohio law for all of the figures. A trial court has great discretion in determining the amount of child support owed and, under the facts and circumstances of this particular case, we do not find that the magistrate's conclusions constituted an abuse of discretion. And, based upon the case-by-case analysis that is required when the parties' incomes exceed $150,000, the trial court found the current support order to be reasonable.

{¶25} And finally, we do not find the Ninth District's decision in *Cook v. Cook* to be persuasive for several reasons. First, the facts in *Cook* are distinguishable and there were additional changes of circumstances in *Cook* that are not present in this case. *See id.* In *Cook*, the prior child support order that the father sought to modify had been filed more than two years earlier, not within the previous three months as in this case. The prior support order in *Cook* also included graduated increases premised upon anticipated increased bonus income. Subsequently, the father lost his job. Although he obtained new employment, his

income did not include a bonus and the anticipated increased bonus income did not materialize. *Id.* In contrast, Paul's income in this case increased.

**{¶26}** In addition to the facts differentiating *Cook* from this case, this Court has consistently held that the modification of a child support order *based upon an agreement of the parties to deviate from the standard schedule*[4] requires that the court find that there must be a substantial change of circumstances that was not contemplated at the time of the original agreement. *See, e.g. Adams v. Adams*, 3d Dist. No. 14-12-03, 2012-Ohio-5131; *Adams v. Sirmans*, 3d Dist. No. 5-08-02, 2008-Ohio-5400; *Steggeman v. Steggeman*, 3d Dist. No. 8-06-23, 2007-Ohio-5482; *Bonner v. Bonner*, 3d Dist. No. 14-05-26, 2005-Ohio-6173. This is true whether the previous agreement was from another state, as in *Adams v. Sirmans*, or was based upon an agreement in Ohio, as in *Adams v. Adams*. Otherwise, a party entering into an agreement whereby the child support payments deviate more than ten percent from the statutory child support schedules, could then immediately file for modification under R.C. 3119.79(A), rendering the agreement moot and meaningless. That is exactly what occurred in this case, wherein Paul

---

[4] Paul also cites to our decision in *Green v. Tarkington*, 3d Dist. 10-10-02, 2010-Ohio-2165, as support for the proposition that parties do not need to meet the requirements of both R.C. 3119.79(A) *and* (C). However, *Green* did not involve any agreement between the parties deviating from the standard schedule. There certainly are instances where the ten percent deviation from the recalculated amount "shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." *See* R.C. 3119.79(A). There are also situations where a change of circumstances that was not contemplated at the time of the issuance of the original child support order provides an independent basis for permitting modification of an existing child support order. *See Karales v. Karales*, 10th Dist. No. 05AP-856, 2006-Ohio-2963, ¶ 15. Such was the case in *Green*, where the amount of parenting time changed substantially, and that change was not foreseen at the time the court ordered the original child support payments (which was not based upon an agreement of the parties).

filed for modification of the agreed order only eighty-five days after the agreement and stipulation was filed.

**{¶27}** In *Adams v. Sirmans*, involving a Georgia court's child support order which was later registered in Ohio, we held that there was no substantial change in circumstances that had not been contemplated at the time of the issuance of the child support order.

> In this case, the parties negotiated a settlement agreement which they voluntarily entered and submitted to the Georgia court. The court then adopted the agreement as part of its decree. The parties both testified that at the time of the agreement, it was contemplated that they would eventually be moving back to Ohio as they both have family here. * * * Additionally, it was reasonable to anticipate that the parties could remarry, have additional children, and change jobs. * * * Although these are changes in circumstances, they are not of the type that would not be contemplated at the time the parties entered into their negotiated separation agreement. The "circumstances surrounding the ten per cent deviation were 'contemplated at the time of the issuance of the child support order.'" *Bonner, supra* at ¶ 15.

*Sirmans* at ¶ 11. *See, also, Adams v. Adams*, ¶¶ 22-30 (containing a detailed synopsis and analysis of this Court's decisions in *Sirmans, Bonner,* and *Steggeman*).

**{¶28}** Based on all of the above, the trial court did not abuse its discretion when it denied Paul's motion to modify the Illinois Court's child support order. The first assignment of error is overruled.

*Second Assignment of Error*

**{¶29}** In his second assignment of error, Paul complains that the trial court erred when it found that the expense reimbursement payments from Jacqueline's employer should not be included as income. Paul contends that there was no evidence that the $.30 a mile she received for business travel was not excessive when there was no evidence as to her actual expenses in operating her vehicle. He further objected to the introduction of additional evidence that Jacqueline offered at the hearing to explain her deposits and reimbursements.

**{¶30}** After reviewing the magistrate's decision dated May 3, 2011 (R-56), the trial court remanded the matter to the magistrate to hear additional evidence concerning Jacqueline's income, specifically, various deposits which she made into her checking account as enumerated in Paul's Defendant's Exhibit 3. The magistrate held that $17,179.99 of Jacqueline's additional deposits should not be included in her income as they were reimbursement of employee business expenses, including $.30 a mile for the 28,306 miles Jacqueline drove during the year for her job. Other amounts were "a refund from a Mediator, a back child support check, a state income tax refund, a transfer of a mutual fund, personal medical expense reimbursements, and payments received from Paul in compliance with the Illinois Court's orders * * *." (Oct. 19, 2011 Mag. Dec., R-73)

**{¶31}** For purposes of calculating child support, "gross income" is defined at R.C. 3119.01(C)(7). None of the expenses that Paul challenges are classified as income. Paul seems to suggest that Jacqueline's expenses meet the criteria of "self-generated income" or "gross receipts received" under R.C. 3119.01(C)(13) which states that self-generated income "includes expense reimbursements or in-kind payments received by a parent from self employment * * * including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."

**{¶32}** However, Jacqueline was not self-employed. She was at all times an employee of three different skilled care facilities since 2004, either as a clinical liaison or a community liaison. In each of these positions, she worked with doctors, nurses and hospitals in a certain geographical territory. It was her job to travel extensively to the health care providers' facilities in her territory to organize functions, make presentations, and usually provide meals and refreshments as part of her job to market her employers' services. She was not an owner, partner, shareholder or anything but an employee of these businesses. The only compensation she received appeared on her W-2 forms and was reported on her federal income taxes. The trial court's decision to use the income figures from these W-2 and tax records to derive her income was supported by the record.

{¶33} Jacqueline's expense reimbursements from her employers were merely repaying her for the money that she had spent, as required by her job. Under the facts in this case, it was not necessary for her to prove that the $.30 per mile reimbursement did not significantly reduce her personal living expenses pursuant to R.C. R.C. 3119.01(C)(13). In addition to Jacqueline's testimony concerning mileage allowances, she produced a copy of the IRS table of "Standard Mileage Rates." It appears as if the magistrate took judicial notice that the IRS reimbursement rate for mileage in 2009 was $.55 per mile. The trial court was entitled to take judicial notice of this information in support of its comment that a business mileage reimbursement of $.30 per mile was "not excessive." *See* Evid.R. 201(B).

{¶34} Paul also takes exception to the trial court remanding the matter back to the magistrate for additional evidence concerning Jacqueline's income. However, the trial court clearly has discretion under Civ.R. 53(D)(4) to take additional evidence before ruling on objections. Even without the additional evidence, Jacqueline testified in the initial hearing that the deposits listed on Paul's Exhibit 3 were expense reimbursement to her from her employer. The additional evidence she provided concerning these deposits were to rebut Paul's assertion that they were additional income.

**{¶35}** There was competent, credible evidence in the record to support the magistrate's determination that the additional deposits to Jacqueline's bank account did not constitute "income." And, even if Jacqueline's expense reimbursements had been counted as income, we do not find that they would have made a difference in creating a significant change of circumstances that was not contemplated at the time of the parties' agreement and stipulation. The second assignment of error is overruled.

### Third Assignment of Error

**{¶36}** Paul's final assignment of error asserts that the trial court erred when it ordered that jurisdiction over the child support order would remain with the Illinois Court, but yet his payments would be through the Hancock County CSEA. Paul claims that this order is inconsistent. He asserts that by ordering the terms of the payments, the court has "modified" the order, and thus, Ohio should become the state having continuing, exclusive jurisdiction. *See* R.C. 3115.48(D) ("on issuance of an order modifying a child support order issued in another state, a tribunal of this state becomes the tribunal having continuing, exclusive jurisdiction.").

**{¶37}** It seems somewhat incongruent that Paul filed the motion, on June 3, 2010 (R-42), requesting that wage-withholding be done through the Hancock County CSEA, yet now he complains because the trial court granted his motion.

We find no support for Paul's assertion that ordering payment through the Hancock County CSEA constituted a "modification" of the order requiring Ohio to assume continuing jurisdiction for all matters.

{¶38} The Illinois Court order did not require that Paul's child support payments be made to any particular person or agency. It simply stated that there would be a new wage support order. Even assuming the payment of child support through the Hancock county CSEA would be a different procedure than what was previously taking place, it is a minor administrative type of change and is not a substantive modification of the existing child support order that would constitute a basis for Ohio to assume complete jurisdiction over this matter.

{¶39} The purpose of the registration provision under R.C. 3115.40 is to facilitate enforcement of an order rendered in one state when the support obligor has moved to another state. In other words, when an obligor moves from State A, any support order entered by that state may be registered and enforced in the obligor's new state of residence. The mere registration for *enforcement* purposes does not constitute a modification, as the statute itself distinguishes between the two purposes. R.C. 3115.40 provides, in relevant part, as follows:

> A registered order issued in another state that is confirmed * * * is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state. * * * *[A] tribunal of this state shall recognize and enforce, but may not modify, a registered order* that has been confirmed if the issuing tribunal had jurisdiction.

(Emphasis added)  R.C. 3115.40.

**{¶40}** R.C. 3125.10 states that "each county shall have a child support enforcement agency."  Among the powers and duties assigned to these agencies, "[e]ach child support enforcement agency shall be responsible in the county it serves *for the enforcement of support orders and shall perform all administrative duties related to the enforcement of any support order*."  (Emphasis added.)  R.C. 2125.11.   A trial court may exercise jurisdiction over a divorce decree or child support order for the purpose of enforcing, but not altering, the decree or order. *Soltis v. Soltis*, 9th Dist. No. 24396, 2009-Ohio-2226, ¶ 8.  *See, also, Lyles v. Lyles*, *supra* (concluding that "the purpose of the registration provision is to facilitate enforcement of an order rendered in one state when the support obligor has moved to another state.)

**{¶41}** The enforcement of the child support by utilizing the Hancock County CSEA to collect Paul's payroll withholding deductions did not constitute a modification which would confer continuing, exclusive jurisdiction upon any tribunal in Ohio.  Paul's third assignment of error is overruled.

**{¶42}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**
**/jlr**

-22-