[Cite as *White-Rhoades v. Rhoades*, 2013-Ohio-2385.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

CYNTHIA KAY WHITE-RHOADES,

    PLAINTIFF-APPELLEE,             CASE NO.  9-12-60

    v.

WAYNE A. RHOADES,                 O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Family Court
Trial Court No. 12 DR 0043

Judgment Reversed and Cause Remanded

Date of Decision:   June 10, 2013


APPEARANCES:

    *Nathan D. Witkin* for Appellant

    *J.C. Ratliff and Jeff Ratliff*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Wayne Rhoades, appeals the judgment of the Court of Common Pleas of Marion County granting Plaintiff-Appellee's, Cynthia White-Rhoades', complaint for divorce. On appeal, Wayne contends that the trial court committed the following errors: (1) it failed to classify the appreciation of Cynthia's residence, located at 295 Kenmore Avenue, Marion, Ohio (the "Kenmore residence"), as marital property; (2) it failed to equally divide the appreciation of the Kenmore residence, in contravention of R.C. 3105.171(C), and further erred when it failed to explain why it did not equally divide the same, in contravention of R.C. 3105.171(F); and (3) it abused its discretion when it only considered his labor when classifying the appreciation of the Kenmore residence. For the reasons that follow, we reverse the trial court's judgment.

{¶2} Wayne and Cynthia married on September 30, 2006, and had no children born of the marriage. Around the date of their marriage, Cynthia contracted with Dennis Nye Construction ("Nye Construction") to build an addition to the Kenmore residence (the "Addition"). As a direct result of the Addition, the Kenmore residence increased in value from $90,000.00 to $130,000.00. In February 2010, Cynthia filed a complaint for divorce.

{¶3} Immediately prior to the final hearing, the parties filed their respective trial briefs. In relevant part, the parties contested the classification of the Kenmore

residence's appreciation. Cynthia argued that the appreciation was separate property, because she financed the Addition with her separate property. Specifically, Cynthia asserted that she paid for the Addition with monies she acquired from several large personal injury settlements.

{¶4} Conversely, Wayne argued that the appreciation was marital property. Specifically, Wayne focused on the classification of the account from which Cynthia drew funds to pay for the Addition. Wayne claimed that the evidence would reveal that over the course of the marriage all of his earnings were deposited into Cynthia's checking account at the Honda Federal Credit Union (the "Honda Account") in Marysville, Ohio. As a result, Wayne asserted that the funds within the Honda Account were commingled to such an extent that it, and the funds therein, transformed into a marital asset. Wayne also claimed that the evidence would reveal that Cynthia paid for the Addition using funds from the Honda Account. Consequently, Wayne suggested that since the Addition was financed using a marital asset, any appreciation resulting from the Addition must be classified as marital property.

{¶5} A final hearing was held on June 12 and August 27, 2012, during which the following uncontroverted evidence was adduced. Prior to the parties' marriage, Cynthia won several large personal injury settlements. On September

12, 2006, the parties entered into an antenuptial agreement, which contained the following relevant provisions:

> 1.    * * * Cynthia K. White owns currently one piece of real estate on 295 Kenmore Ave., Marion, Ohio 43302, and maintains a[n] * * * account with a substantial balance at the Honda Federal Credit Union in Marysville, Ohio. * * *
>
> 2.    The property and indebtedness of each person will remain separate throughout the duration of their prospective marriage[.] * * *
>
> 3.    Any * * * lawsuit settlements that Cynthia K. White receives, Wayne willingly agrees that these separate holdings from Cynthia's * * * settlements from her law suits [sic] will be sole ownership of Cynthia K. White, and waives all rights to any ownership of these holdings.  Plaintiff's Exhibit 1, p. 1.

{¶6} Cynthia maintained the Honda Account prior to and during the marriage.  Cynthia initially deposited her personal injury settlement payments, which totaled in excess of $1,000,000.00, into the Honda Account.  A significant portion of those payments were subsequently transferred to various investment accounts.

{¶7} Although Wayne's name was not associated with the Honda Account and he could not draw money from the same, his income from his manufacturing job was deposited into the Honda Account between November 2006 and December 2011.  During this period of time, Wayne deposited approximately $84,000.00 into the Honda Account.

{¶8} Cynthia paid Nye Construction for the Addition via checks drawn on the Honda Account. In particular, Cynthia issued checks to Nye Construction on August 17, 2006, September 13, 2007, October 11, 2007, November 7, 2007, December 13, 2007, and January 8, 2008. Plaintiff's Exhibits 19-24.

{¶9} On September 28, 2012, the trial court entered the divorce decree. In relevant part, the trial court determined that the appreciation of the Kenmore residence was separate property. In doing so, the trial court found as follows:

> During the course of the marriage the residence at 295 Kenmore Avenue underwent an addition. [Wayne] seeks to be awarded one-half of the increase in the value of the real property due to the labor he performed. The evidence shows that [Cynthia] engaged the services of a contractor to construct an addition to the Kenmore Avenue property. The evidence further shows that [Cynthia] expended funds in excess of $200,000.00 for this construction. [Wayne] acknowledged that the funds for the construction came from [Cynthia's] monies. However, [Wayne] claims he is entitled to a portion of the increase in the value of the property because he assisted the construction team with his labor and expertise. [Wayne] further indicated that he used the opportunity to learn some construction skills from the contractor.
>
> Don Davis, a certified real estate appraiser, appraised the home with and without the addition. He determined, and the parties stipulated, that the increase in the value of the property is $40,000.00. The Court finds that [Wayne] failed to show that the work he performed and the expertise he provided increased the value of the real estate. The Court therefore finds that [Wayne's] labor and expertise did not result in any comingling of the property and the property shall remain [Cynthia's] separate property. (Docket No. 47, p. 2-3).

The trial court also determined that the Honda Account was a marital asset. In doing so, the trial court found as follows:

[Wayne] claims that his income was deposited into [Cynthia's] checking account and that as a result there has been a comingling of assets. Bank records show that [Wayne's] paycheck was direct deposited into [Cynthia's] Honda Federal Credit Union checking account ending in account #3693. This arrangement was made because [Wayne], due to prior felony convictions, was not able to open his own separate checking account. Additionally, direct deposit was required by his employer. [Wayne] acknowledged that awards on [Cynthia's] personal injury claims were deposited into this account and that they were not comingled and are [Cynthia's] separate property. [Cynthia] eventually moved those funds into her investment accounts. The Court finds that those funds remain [Cynthia's] separate property. The bank records show that the monies in [Cynthia's] Honda Federal Credit Union checking account indicated by checking #3693 were used for various expenditures. Some of the expenses were for the parties' vacations, dining and other non-essential purposes. Others are attributable to trips that [Wayne] had separately from [Cynthia]. Other expenses were used for the daily living expenses of the parties. [Cynthia] has not met the burden of showing adequate tracing to show that the account, although solely in her name, was not comingled with [Wayne's] funds. The Court therefore finds that checking account ending with the numbers 3693 is a marital asset. Both parties' property affidavits show that the balance in this account at separation was $1,713.77. These funds are marital. (*Id*. at p. 3-4).

{¶10} It is from this judgment Wayne filed this timely appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT MISAPPLIED 3105.171(A)(3)(A)(III) [sic] BY FAILING TO FIND THAT THE APPRECIATION ON PLAINTIFF'S SEPARATE PROPERTY DUE TO THE MONETARY CONTRIBUTIONS OF THE PLAINTIFF DURING THE MARRIAGE WAS MARITAL PROPERTY SUBJECT TO DIVISION.**

*Assignment of Error No. II*

**THE TRIAL COURT FAILED TO MAKE AN EQUAL DIVISION OF THE MARITAL PROPERTY, AS DIRECTED BY R.C. 3105.171(C), WITHOUT STATING THAT AN EQUAL DIVISION WOULD BE INEQUITABLE OR INDICATING ANY REASONS FOR AN UNEQUAL DIVISION LISTED IN R.C. 3105.171(F).**

*Assignment of Error No. III*

**THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT HUSBAND ONLY SOUGHT THE APPRECIATION ON THE WIFE'S SEPARATE PROPERTY THROUGH HIS OWN LABOR.**

{¶11} Due to the nature of Wayne's assignments of error, we elect to address his third assignment of error first since we find it to be dispositive of the matter.

*Assignment of Error No. III*

{¶12} In his third assignment of error, Wayne contends that the trial court abused its discretion when it only considered his labor when classifying the appreciation of the Kenmore residence. Specifically, Wayne maintains that he never argued that the appreciation should be classified as marital property due to his labor. Instead, Wayne maintains that he expressly argued that the appreciation is marital property because the funds used to pay for the Addition were drawn from a marital asset, i.e., the Honda Account. Because we find that the trial court

erroneously disregarded Wayne's argument that the Addition was financed with funds drawn from a marital asset, we agree.

**{¶13}** In divorce proceedings, the trial court "shall * * * determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). In relevant part, marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" R.C. 3105.171(A)(3)(a)(iii).

**{¶14}** Upon review, we find that the trial court only considered Wayne's labor in classifying the appreciation of the Kenmore residence because it found that Wayne "acknowledged that the funds for the construction came from [Cynthia's separate] monies."[1] (Docket No. 47, p. 3). Given this finding, there was no need for the trial court to consider whether the Addition, which caused the appreciation, was financed with funds drawn from a marital asset.

**{¶15}** Wayne, however, asserts that he never acknowledged that the funds used to construct the Addition came from Cynthia's separate property. Instead, Wayne maintains that he expressly argued that the funds used to pay for the Addition were drawn from a marital asset, i.e., the Honda Account, and, as a result, the appreciation is marital property. Accordingly, we must determine

---

[1] Given the trial court's determination that the appreciation of the Kenmore residence was separate property, we presume that the phrase "Cynthia's monies," which the trial court used in the divorce decree, refers to Cynthia's separate property.

whether the record contains competent, credible evidence to support the trial court's finding that Wayne acknowledged that Cynthia paid for the Addition using her separate property. *Parrick v. Parrick*, 3d Dist. No. 5-12-12, 2013-Ohio-422, ¶ 17, citing *Polk v. Polk*, 188 Ohio App.3d 809, 2010-Ohio-3355, ¶ 16 (2d Dist.) ("An appellate court must * * * give substantial deference to the trial court's findings of fact and will not reverse those findings if they are supported by competent, credible evidence.").

{¶16} Turning to the record, we find several instances wherein Wayne expressly argued that the Addition was financed with funds drawn from a marital asset. The argument first appears in his trial brief. Specifically, Wayne argued that "if the [Honda Account] containing the entirety of [his] wages during the marriage * * * was used to improve Plaintiff's separate property, the [trial court] must designate either the improvements or * * * the entire property as marital and subject to division." (Docket No. 37, p. 7). Wayne also argued in his trial brief that "because [his] entire earnings during the marriage * * * of $84,142.70 were commingled into the alleged $300,000.00 made in improvements to the property, [his] contributions into the improvements on 295 Kenmore Ave., Marion, may have caused a transmutation of the entire value of the property from separate to marital." (*Id*. at p. 8). As a result of these arguments, Wayne proposed several options in dividing the Kenmore residence, including an option where he be

awarded half of the appreciation that resulted from the construction of the Addition.

{¶17} Likewise, Wayne's testimony during the final hearing demonstrates that he did not abandon the argument he advanced in his trial brief. In particular, the following relevant exchange took place during Cynthia's case-in-chief:

> Q[:]  Okay.  Now, this house on Kenmore that she bought that is in the prenuptial agreement, she bought with popcorn lung money, there was a contractor that came over to remodel the house, isn't that correct?
>
> * * *
>
> A[:]  Oh, on Kenmore.  She owned the house prior to her popcorn stuff.
>
> Q[:]  Okay.  So she had the house prior to?
>
> A[:]  Correct.
>
> Q[:]  And she got - - that house remodeled, isn't that correct?
>
> A[:]  Correct.  We added on to the house.  We added 1[,]800 square feet on to the house, to the original 1[,]600 [square] feet [of the] house.
>
> Q[:]  You say we added on,  How did you add on to it?
>
> A[:]  Via my money from working * * * .  Tr., p. 44-5.

Shortly after this exchange, Wayne again asserted that the Addition was financed, in part, with the income he earned during the marriage.

-10-

Q[:]  So due to your expertise with this lady, you've improved the property $40,000, but spent more than one hundred sixty-five, correct?

A[:]  Correct.

Q[:]  That's not really very good expertise, is it?

A[:]  I'm not the one that made all the decisions on writing the checks and paying the people.

* * *

Q[:]  But you're saying she used your money to put in it?

A[:]  She used both of our monies to put in it.  Tr., p. 55-6.

The foregoing argument and testimony demonstrates that Wayne consistently maintained that the appreciation of the Kenmore residence was a marital asset because it was financed using monies drawn from the Honda Account in which he deposited all of his earnings.

{¶18} Conversely, Cynthia argues that the trial court's finding that Wayne acknowledged that the Addition was financed with her separate property was supported by competent, credible evidence.  In particular, Cynthia directs our attention to the following exchange:

Q[:]  Okay.  So if she paid [$]40,000 in attorney fees, if she paid [$]254,000 to the contractor [for the Addition], that's true, isn't it?

A[:]  True.  Tr., p. 254-5.

We fail to see how this exchange demonstrates that Wayne acknowledged that Cynthia financed the Addition *with her separate property*. The question does not ask whether she used her separate property, i.e., the monies from her personal injury settlements, to pay for the Addition. Instead, the question merely asks whether "she paid" for the Addition. *Id*. at p. 254. Given the uncontroverted facts that the Addition was financed entirely using funds drawn from the Honda Account and that Cynthia was the only individual authorized to draw funds from the Honda Account, it is not surprising that Wayne would agree with the assertion that "[Cynthia] paid" for the Addition. *Id*. Moreover, the exchange that occurs immediately after the foregoing exchange further belies Cynthia's claim that Wayne acknowledged that the Addition was financed with her separate property.

> Q[:] That's $294,000 she has paid on that house that you haven't paid a dime. How do you expect to get [$]20,000 out of the house? The house is a loss.
>
> A[:] How do you say that when - - granted, she might have paid all this money up through the time that we were married, but where did my money go that I invested in this relationship? It's just not all her. I worked every day. Where did my money go that was supposed to be a 50/50? Where? Tr., p. 255.

Wayne's retorts of "where did my money go that I invested in the relationship[,]" and "[i]t's just not all her" are not consistent with someone who is alleged to have just acknowledged that Cynthia paid for the Addition with her separate property. *Id*. To the contrary, Wayne's response is consistent with his argument that the

appreciation of the Kenmore residence was a marital asset because it was financed using monies drawn from the Honda Account in which he deposited all of his earnings. For all of these reasons, we find Cynthia's argument unavailing.

{¶19} Notwithstanding Cynthia's foregoing argument, we further note that we have found no evidence in the record which could reasonably be construed to suggest that Wayne acknowledged that Cynthia paid for the Addition with her separate property. Accordingly, we find that the trial court erred when it found that Wayne "acknowledged that the funds for the construction came from [Cynthia's separate] monies." (Docket No. 47, p. 3).

{¶20} Although we have determined that trial court erred, our inquiry is not complete. We must determine whether the error was harmless or prejudicial.

{¶21} Civ.R. 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also

determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." *Cappara v. Schibley*, 85 Ohio St.3d 403, 408 (1999), quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349 (1950), paragraph three of the syllabus.

{¶22} Had the trial court not erred, the trial court's classification of the Kenmore residence's appreciation would more than likely have been different. Wayne's primary argument concerning the classification of the appreciation was dependent on the trial court's classification of the Honda Account. Here, the trial court found that the Honda Account was a marital asset. In light of this finding and the undisputed fact that the Addition was financed using monies drawn from the Honda Account, it is highly probable that but for the trial court's error it would have classified the appreciation of the Kenmore residence as marital property.

{¶23} Accordingly, we sustain Wayne's third assignment of error and remand this matter for the trial court to consider the argument Wayne asserted in his trial brief concerning the classification of the Kenmore residence's appreciation.

*Assignments of Error Nos. I & II*

{¶24} In his first and second assignments of error, Wayne contends that the trial court erred when it failed to classify the appreciation of the Kenmore residence as marital property, failed to equally divide the appreciation of the

-14-

Kenmore residence, and failed to explain why it did not equally divide the same. Given our disposition of Wayne's third assignment of error, Wayne's first and second assignments of error are moot and we decline to address them. App.R. 12(A)(1)(c).

**{¶25}** Having found error prejudicial to Wayne herein, in the particulars assigned and argued in his third assignment of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and
Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**